ELIZABETH HEIGHTS REALTY COMPANY, complainant-respondent,

*v.*

KARL SCHAFFER, defendant-appellant.

[Argued May 26th, 1931. Decided February 1st, 1932.]

*Mr. Charles Wagner,* for the appellant.

*Mr. Adolf L. Engelke,* for the respondent.

The opinion of the court was delivered by

PARKER, J.

The bill was filed to redeem property previously owned by the complainant corporation from tax sales made in 1917 pursuant to the Tax act of 1903. *P. L. p. 394.* At the hearing it was conceded that there was a right of redemption

with respect to a portion of the premises described in the bill and no question is raised on this appeal in this regard. As to the remainder of the premises involved in the suit, redemption was resisted but the vice-chancellor held that the complainant was entitled to redeem, and so decreed, and the appeal was from that decree. It appears that the purchaser served no notice to redeem until the two-year period provided in the statute had almost expired. The effect of this under the statute was to require redemption within sixty days after the service of notice. This notice was served in October, 1919, and there was no redemption, and no offer to redeem, until sometime in 1926. The claim made before the vice-chancellor was that the right to redeem existed because of various alleged defects, first, in the service of the notice to redeem, and secondly, in the recording of the tax sale papers in the register's office. The vice-chancellor supported these claims, but on a careful consideration of the case, we conclude that he was in error in permitting a redemption.

The certificates of tax sale were regular in form. At the time the tax sale was made, the complainant appears to have been a live corporation, but in 1918 its charter was revoked by executive proclamation for failure to pay state tax. *P. L. 1918 p. 1235.* The revocation was canceled and the company reinstated in 1926, probably as a preliminary to proceedings by way of redemption. However, at the time the notices were served the revocation of charter was in force.

This brings us to the important question relating to the service of notice. Section 59 of the act of 1903 (*Comp. Stat. p. 5131*), provides that the notice shall be served personally on persons interested within the taxing district. This is the only provision for service within the district and the respondent corporation had its principal office in the Elizabeth district and should therefore be considered as resident there. It is worthy of note that the statute does not seem to contain any specific provision with regard to service of such notice upon a corporation and even the later act of 1918 (*P. L. p. 895 § 46*) uses the same language as that in the act of 1903.

The case shows that at the time notice was served, the president of the corporation, assuming it to be a lawful corporation, was William J. Shearer. It also shows, without contradiction, that notice to redeem was served upon him. This notice was addressed to Elizabeth Heights Realty Company as well as to certain individuals not necessary to mention at this time. So far the only question with respect to the legality of service of the notice, is the question whether notice thus served on the president of a corporation whose charter had been declared revoked by executive proclamation was a sufficient service under the statute. We have no hesitation in holding that it was. The statute speaks of personal service, but as no provision is made with regard to corporations, as such, it is clear that if notice must be served upon a corporation, the only way in which it can be served is upon some properly qualified officer of the corporation, and particularly the president as the titular head of the corporate body. In the case, therefore, of a corporation whose charter was still alive, we consider that such service on the president would be plainly good.

The next question is how such service should properly be made where the charter of the corporation had been revoked. A somewhat similar question was considered by the supreme court in the case of *Hould* v. *John P. Squire & Co., 81 N. J. Law 103.* In that case a summons in a tort action was served after the voluntary dissolution of the corporation upon the resident agent whose designation was on file in the office of the secretary of state, and this was held to be lawful service. That decision has stood for twenty years without question so far as reported cases show and we see no reason for disapproving the rules there laid down. The question of legality of service upon a director of a dissolved corporation was also argued in that case, but not decided, the court finding it unnecessary in view of the decision reached with respect to the service upon the registered agent. However, we think that service upon a director would also be good.

The rule is general that when a corporation ceases to exist, its property and property rights pass as of course to the

board of directors as trustees for the stockholders, and if any cause of action is to be asserted affecting those property rights, naturally the parties to be notified are those who have been in charge. We conclude, therefore, that service of these tax sale notices upon the president of the respondent corporation in this case was a legal service.

The other two questions in the case relate to matters affecting, not the validity of the service of the notice to redeem, but the validity of the papers relating thereto and to the tax sale as recorded in the register's office of Union county. The first of these points is that not only the record but the whole proceeding to cut off the right of redemption was vitiated because the affidavit of service upon Mr. Shearer described him as an "incorporator" of the Elizabeth Heights Realty Company instead of describing him as "president." The other point is that the affidavit itself was vitiated because the notary public who signed the *jurat,* and happened to be a woman, had married subsequent to being commissioned as an unmarried woman, and therefore (so runs the argument) was disqualified at the time of taking the affidavit from so doing. We consider that both these points are entirely without substance.

The recording of the papers would seem to have no bearing whatever upon the validity of the notice to redeem at the expiration of the statutory time as cutting off the right of redemption. It was well said by Vice-Chancellor Backes in *Henry C. McCandless, Inc.,* v. *Schaffer, 103 N. J. Eq. 170,* that while the record in all its essentials must be statutorily perfect to raise the presumption of compliance with the statute and of the title of the purchaser, and while in that case defective proof of service invalidates the certificate of sale as presumptive evidence of title and renders abortive the record title of the purchaser as a defense to the right to redeem, it does not follow, however, that the right to redeem exists. "The right is barred, not by a perfect record title, but by the failure to redeem within the time limited by law, after notice. An owner has two years from the date of sale in which to redeem, provided sixty days' notice to redeem be given

within that time, and, thereafter, sixty days after notice. Thereafter, the statute says, 'the right of redemption shall be barred.' The purchaser's title is thenceforth absolute and he may make it a matter of record by recording the certificate, proof of service and proof of failure to redeem, and the record is his deed or conveyance and presumptive evidence of a valid legal title. The presumption not prevailing here, the burden is on Schaffer to prove that the right to redeem has been barred by proper service of notice."

In the case just cited the court of chancery considered that the evidence failed to show the right to redeem had been barred by proper service of notice. In the case before us we consider that the proof is adequate in that regard; and that being so, as between the parties to this suit we have simply the claim of a former owner as against the tax purchaser for a redemption in the face of sufficient proof that the right to redeem was barred by proper service of notice. In this aspect of the matter, the question whether the papers as recorded were in proper form becomes purely academic. It is not the recording of the papers, but the service of the notice that bars the right of redemption. However, it may be well to say with respect to the married notary, that we are unable to follow the argument of counsel to the effect that where a married woman has been commissioned as a notary, she vacates that commission by marriage. In the absence of some statute in that regard, we should say that such a doctrine is unwarranted in law, especially in these modern days. No statute or decision is cited in support of this proposition, and we believe there is none. It is true that in 1923 the legislature passed two acts found at pages 265 and 267 of the statutes of that year, referring respectively to women attorneys-at-law and masters in chancery, requiring them to file upon marriage a certificate of that fact in a suitable office; but this seems to be merely directory and intended as an orderly way of putting on record that fact of the marriage in connection with the commission as attorney-at-law or master in chancery, as the case may be, and it is unnecessary to hold, and would be improper to

hold, that the statutes were necessary in order to prevent the lapsing because of marriage of the right of a woman to practice law or to act as a master in chancery. That the legislature never so intended may be read from the third section of each act wherein it is provided that the signature of any woman official heretofore signed to any document, &c., although she was married and her married name does not appear thereon, shall not in anywise be called in question. This case was decided in chancery in November, 1929, and in 1930 (*P. L. p. 317*) the legislature passed an act to ratify the signature of any woman notary public who had married since her commission, no matter whether she had signed her married name or her maiden name thereto, and at page 955 of the same volume will be found another act requiring a woman notary upon marriage to file a certificate of that marriage. As we have just said, legislation of this character is merely directory.

One more point remains to be noticed, although in view of what has been said it does not really affect the case.

It happened that there were two different sets of papers to record for two different properties, which may for present purposes be called tract A and tract B. The affidavit of service of notice to redeem for tract A was, by a clerical error attached to the papers referring to tract B, and similarly the notice for tract B was attached to the tract A papers, and both sets were recorded in that form. Later this error was discovered and the affidavits were transferred to the papers to which they belonged and the papers recorded over again. The vice-chancellor seems to have thought that the action of someone in making this transfer and in filing an explanatory affidavit was a reprehensible act. We fail to see that there was anything unethical or reprehensible about it, any more so than the re-recording of a defective deed after the defect had been amended, and with a new acknowledgment.

However, these latter points are of minor consequence. The gravamen of the case is the question whether notice to redeem was properly served and the affidavit of such service is

sufficient. We are clear it was properly served and that there is adequate evidence of that fact, and it therefore follows that the right of redemption was cut off after the sixty days had expired. This conclusion leads to a reversal of the decree and a dismissal of the bill so far as affecting the tracts now in dispute.

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, CAMPBELL, LLOYD, CASE, BODINE, DALY, DONGES, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, JJ.   14.